## Case No. 2,009a.

### BROWN v. HARTLEY.

[Betts' Scr. Bk. 225.]

District Court, S. D. New York. August 5, 1851.

SEAMEN—DISCHARGE IN FOREIGN PORT—EXTRA WAGES.

[1. A colored seaman shipping for a port in the Gulf of Mexico and elsewhere for a period of ten months, and discharged at his own request at the port of New Orleans to relieve him from the danger of imprisonment during the stay of the ship according to the laws of that port, is not entitled to wages for the entire voyage of the vessel.]

[2. New Orleans is not, as to the state of Maine, a foreign country within Act Cong. 1803, c. 9, § 3 (2 Stat. 203), entitling a seaman discharged in a foreign country with his own consent to three months' extra wages.]

[3. Nor is the consent of a consul or a commercial agent necessary to render his discharge valid.]

[In admiralty. Libel in personam by Wesley Brown against Richard F. C. Hartley, master of the ship Hungarian, for extra wages as a seaman. Libel dismissed.]

In November, 1849, the libellant signed shipping articles for a voyage as seaman on board the ship Hungarian, from the port of Saco, in Maine, to a port in the Gulf of Mexico, and thence wherever the ship may proceed with or in search of freight, for the time of ten calendar months. The ship went to Mobile, and thence to New Orleans. At the latter port she was moored out of the precincts of the city, to prevent the libellant and other colored men of the crew being put in prison during the stay of the ship there, according to the laws at that port. After so remaining a few days, the libellant requested the defendant, the master of the ship, to procure him a berth on board another vessel going north, to relieve him from the danger of imprisonment at New Orleans. Such place was procured for him, and three other colored men of the crew.—berths on board the ships Egyptian and Trenton, one bound to New York, and the other to Boston. The libellant shipped accordingly on such vessel at the same rate of wages he was paid on the Hungarian, and sailed to this port. He was paid in New Orleans his full wages on board the Hungarian to the time he shipped on board the Egyptian.

He now brings his suit for wages for the entire voyage of the Hungarian, and demands a balance of over $90. It is considered by THE COURT: (1) That it was lawful and proper, under the facts of the case, for the defendant to discharge the libellant from the Hungarian at New Orleans, and that the arrangement was at the instance and for the benefit of the libellant. (2) That New Orleans is not a foreign country to the state of Maine, within the meaning of the act of congress of February 28, 1803 [2 Stat. 203] so that the libellant is not entitled on his discharge there, with his own consent, to three months' wages; nor was the consent of a consul or commercial agent to his discharge necessary, in order to render it valid. (3) That the libellant has been paid by the defendant, in full, all the wages earned on board the Hungarian, and to which he is by law entitled.

Wherefore, it is ordered that the libel be dismissed, with costs.